UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SORIYAA EK,<br><br>　　　　Petitioner,<br><br>　v.<br><br>F. FOULK,<br><br>　　　　Respondent. | No. 2: 13-cv-1649 KJN P<br><br><br>ORDER |

I. Introduction

　　　　Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned.

　　　　Petitioner challenges his 2008 conviction for arson (Cal. Penal Code § 451(b)), street terrorism (Cal. Penal Code § 186.22(a)), two counts of dissuading a witness by force or threat (Cal. Penal Code § 136.1(c)(1)), participating in a criminal street gang (Cal. Penal Code § 186.22(a)), and two counts of criminal threats (Cal. Penal Code § 422).[1] Petitioner is serving a sentence of fourteen years to life plus nine years and four months.

　　　　The petition raises the following claims: 1) insufficient evidence to support convictions

---

[1] Petitioner was also charged with attempted murder, to which the jury rendered a verdict of not guilty.

for violating California Penal Code 136.1 (2 claims); 2) jury instruction error; and 3) his sentence violates double jeopardy and state law.

After carefully considering the record, the undersigned denies the petition for the reasons stated herein.

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

2

unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id., at 1097.

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those

3

arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

III. Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein.

> FACTUAL AND PROCEDURAL BACKGROUND
>
> On January 6, 2007, Christina McDonald was living at 4404 Manchester Avenue, apartment number 28 in Stockton, California. She lived with her fiancé Eric Lamarra, her infant daughter, and Eric's parents Rocky Lamarra and Rebecca Nagy. Around 11:40 p.m. McDonald was watching television in the living room with her daughter. Her daughter was in a crib between the couch and the window. Eric was at another apartment, and his parents were asleep upstairs.
>
> McDonald heard voices outside the apartment. She went to the door and opened it. She saw two individuals. She recognized them, but did not know their names. She had seen them hanging around with the usual bunch of troublemakers. One of them had "very noticeable gold teeth" and was wearing a bright orange sweatshirt. The other one, who was thinner, was wearing a black sweatshirt. He was later identified as Louie. Both men glared at her. The man in the orange sweatshirt, later identified as Ek, approached her and said, "Fuck you. You're a cop caller. Go inside, bitch. You're going to get yours[.]"
>
> McDonald closed the door. She debated whether or not to call the police, and finally decided just to sit down and forget about it. She then heard breaking glass and saw her curtains go up in flames. She ran to her daughter's crib and picked her daughter up, burning her hand on the metal crib because it was so hot. She managed to wake up everyone and get them out of the apartment through the back door. A neighbor had to cut the back fence so they could escape.
>
> Emily Un, McDonald's apartment manager, was driving toward the complex around midnight. She saw defendants running out of the entrance to the complex. She recognized them because they were always disturbing her tenants, pulling out the no trespassing signs, and writing on the walls. Ek was wearing an orange sweatshirt, orange cap, and khaki pants. He was carrying a yellow bucket. Louie was wearing a black sweatshirt, black jeans, and a black hat. As Un walked to her apartment, she saw defendants behind one of the vacant apartments. She told them to get out and asked what they were doing there.
>
> Un started walking toward defendants. They both took off their sweatshirts, dropped them, and kept running. Un smelled gasoline

on the shirts. Defendants took the yellow bucket with them. Un turned around and saw smoke coming from the apartments and heard the sirens.

The discarded sweatshirts tested positive for the presence of gasoline, as did burnt debris from the apartment fire. The sweatshirts were also tested for DNA evidence. The orange sweatshirt contained one major and two minor DNA contributors. The profile of the major contributor matched Ek's profile. The black sweatshirt also contained a mixture of DNA, but it was not possible to determine a major and minor contributor. Louie was determined to be a possible contributor to the DNA on the black sweatshirt, although statistically the match was not as strong as for Ek.

An arson investigator determined that the fire originated near the front doorway of McDonald's apartment. The fire traveled in from the outside. The fire was caused when an open flame, spark, or hot surface was used to ignite a liquid to start the fire.

McDonald testified that her neighborhood was gang infested, the predominant gang being the Tiny Raskal Gang (TRG), an Asian gang. She had seen Louie and Ek with other TRG members. She had a run-in with TRG about two months prior to the fire. She was sitting in her back yard when two gang members, who were running from the police, jumped her back fence and tried to come into the yard. She told them they were not allowed in the yard and had to leave. They got mad, and when her fiancé came out to support her, they threw a large potted plant at his head. They said they were going to get a gun and come back.

She called the police and filed a report. The individuals were Joseph Danh and Rachana Pheng. Right after that incident, someone came to their door and told them not to testify, and that things would be better for them if they did not. TRG members would often threaten them with sticks. They often had guns. They sold drugs and harassed the neighbors. They called her honky, cop caller, and dumb white bitch. McDonald said things got so bad that she and her family just stayed inside.

Just prior to the incident where defendants set fire to the apartment, McDonald had called the police because gang members were yelling and shooting guns. She could not relax in her own apartment because she was afraid a bullet would come through the window.

Two or three weeks after the fire, around January 15, 2007, McDonald called police to make an anonymous tip when she spotted Ek at the volleyball field. That day, Ek came to her back gate, pointed a gun at her, called her a cop calling bitch, and said she was going to get hers, just like the night of the fire.

Ek was arrested on February 14, 2007, and Louie was arrested on March 31, 2007. Louie admitted association with the TRG. Ek admitted association with MLS, the Moonlight Strangers. He had

> MLS tattooed on his left forearm.
>
> Detective Richard Slater testified as an expert on Asian street gangs. Although both TRG and MLS are considered Asian street gangs, not all of their members are Asian. It is common for TRG members and MLS members to hang out together. They do crimes together and back up each other. In Stockton, both TRG and MLS are Blood gang subsets. Detective Slater opined that the arson of the apartment and subsequent threats were for the benefit of the TRG gang, specifically to punish McDonald and Eric Lamarra for calling the police on TRG gang members and to intimidate the entire neighborhood.

(ECF No. 14 at 34-38.)

IV. <u>Insufficient Evidence</u>

    A. <u>Legal Standard</u>

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). <u>Jackson</u> established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. <u>U.S. v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). First, the court considers the evidence at trial in the light most favorable to the prosecution. <u>Id.</u>, citing <u>Jackson</u>, 443 U.S. at 319. "'[W]hen faced with a record of historical facts that supports conflicting inferences,' a reviewing court 'must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>Id.</u>, quoting <u>Jackson</u>, 443 U.S. at 326.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" <u>Id.</u>, quoting <u>Jackson</u>, 443 U.S. at 319. "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." <u>Id.</u>

Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16.

"Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012) (per curiam) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005). Because this claim is governed by the AEDPA, this court owes a "double dose of deference" to the decision of the state court. Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting Boyer v. Belleque, 659 F.3d 957, 960 (9th Cir. 2011)).

B. Insufficient Evidence of Dissuading a Witness - Count 3

Petitioner argues that there was insufficient evidence that he had the intent to dissuade victim McDonald from either making a report of a crime or of causing someone to be arrested for a crime she had witnessed of which she had been the victim. This claim is based on count 3, which charged petitioner with dissuading victim McDonald on January 6, 2007. (See Court Transcript ("CT") at 417 (fourth amended information).) Petitioner argues that the evidence instead demonstrated that he intended to retaliate against victim McDonald for reporting crimes committed by his gang.

The California Court of Appeal was the last state court to issue a reasoned opinion addressing this claim. Accordingly, the undersigned considers whether the denial of this claim by

7

the California Court of Appeal was objectively unreasonable.  The California Court of Appeal denied this claim for the reasons stated herein:

    A.  January 6, 2007 Incident

    The information alleged in count 3 that both defendants committed the crime of dissuading a witness by force or threat "in violation of Section 136.1(c)(1)[.]"  It was alleged that the act occurred on or about January 6, 2007.  It was specifically alleged that defendants dissuaded McDonald from "MAKING A REPORT OF VICTIMIZATION OR ASSISTING IN THE PROSECUTION OF DEFENDANT."

    Section 136.1, subdivision (c) makes it a felony to knowingly and maliciously prevent or dissuade, or attempt to prevent or dissuade a witness or victim:  (1) from attending or giving testimony at a trial or other proceeding; (2) from making a report or that victimization; (3) from causing, inter alia, a complaint, indictment, or information to be sought and prosecuted and assisting in the prosecution thereof; or (4) from causing or seeking the arrest of any person in connection with that victimization.  [Footnote 2]

> [Footnote 2:  The full text of section 136.1, subdivision (a) through (c) states:
>
> "(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:
>
> Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.
>
> Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.
>
> For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice.
>
> (b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:
>
> (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

> (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.
>
> (3) Arresting or causing the arrest of any person in connection with that victimization.
>
> (c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three or four years under any of the following circumstances:
>
> (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.
>
> (2) Where the act is in furtherance of a conspiracy.
>
> (3) Where the act is committed by any person who has been convicted of any violation of this section, any predecessor law hereto or any federal statute or statute of any other state which, if the act prosecuted was committed in this state, would be a violation of this section.
>
> (4) Where the act is committed by any person for pecuniary gain or for any other consideration acting upon the request of any other person.  All parties to such a transaction are guilty of a felony."

Thus, the information alleged that defendants violated (2) and (3) above, which correspond to subdivisions (b)(1) and (b)(2) of the statute.

The jury was instructed with a modified version of CALCRIM No. 2622.  The instruction stated that the prohibited acts were:  (1) preventing or discouraging McDonald from reporting a victimization, or (2) causing the arrest of anyone in connection with a crime.  Thus, unlike the information which charged a violation under subdivisions (b)(1) and (b)(2), the instruction corresponded with subdivisions (b)(1) and (b)(3) of section 136.1.

Defendants assume for purposes of appeal that the convictions were as instructed, under subdivisions (b)(1) and (b)(3).  They argue that there is insufficient evidence in the record that they had the specific intent to dissuade McDonald from either making a report of a crime or of causing someone to be arrested for a crime she had witnessed or of which she had been a victim.  [Footnote 3.]

> [Footnote 3: Defendant Louie joins in all issues that affect him and are raised in Ek's opening brief.]

They claim the only reasonable interpretation of the evidence is that

9

> they intended only to retaliate against McDonald for reports she had already made.
>
> Defendants argue the threat could not have been to dissuade McDonald from reporting or seeking arrests for the incident involving Danh and Pheng because she had already reported that incident, and Danh and Pheng had been arrested and prosecuted for it. They argue that other criminal acts McDonald had witnessed being committed by TRG members could not have been the basis for the threats because there was no evidence defendants were involved in any of those incidents or that defendants knew McDonald had witnessed any of those crimes.
>
> However, the evidence supports the jury's finding that defendants' purpose in targeting McDonald was to prevent her from reporting both general criminal activities committed by TRG in the neighborhood, and specifically the arson incident.
>
> The reason McDonald was targeted was made clear by Ek's own words when he called McDonald a "cop calling bitch." Defendants thus knew that McDonald had called authorities about criminal activities in the past. McDonald testified she regularly called the police about the gang activities in the neighborhood, although she did not always give her name. The prosecution's gang expert testified to his opinion that one purpose of the threat and the arson was to demonstrate to the neighborhood (and presumably McDonald as well) that the consequences of reporting gang activity to the police are dire. He opined that one purpose of the arson was to send a message to the neighborhood not to "mess with" the gang. Thus, there was sufficient evidence to support the jury's finding that the threat and the arson were for the specific purpose of preventing McDonald from calling the police to report gang activity she either witnessed or experienced as a victim.
>
> A defendant may violate section 136.1 where the threat is made at the time of the crime itself. Thus, in People v. Hallock (1989) 208 Cal.App.3d 595, 607, the court found that where the defendant, before escaping, told the attempted rape victim, "'if you tell anybody anything that happened tonight here, … I'll blow your house up [,]'" the threat could reasonably have been believed to have been directed at reporting the crime to the police. Likewise, here defendants called McDonald a cop caller and told her she would get hers shortly before they set her apartment on fire. This is sufficient evidence for the jury to conclude that defendants' words combined with their actions were specifically intended to dissuade her from contacting the police about the fire.

(ECF No. 14 at 41-45.)

Viewing the evidence in the light most favorable to the verdict, the undersigned finds that there was sufficient evidence, as discussed above by the California Court of Appeal, from which a rational trier of fact could have found that petitioner possessed the specific intent to prevent

10

victim McDonald from reporting general criminal activities committed by TRG and also the arson incident. The rejection of this claim by the California Court of Appeal was not objectively unreasonable under Cavazos, 132 S. Ct. at 4. Accordingly, this claim is denied.[2]

      B. <u>Insufficient Evidence of Dissuading a Witness - Count 7</u>

In this claim, petitioner challenges the sufficiency of evidence of his conviction for violating California Penal Code § 136.1 on the grounds that this section does not apply to attempts to prevent the victim from reporting crimes not yet committed. This claim is based on count 7, which charged petitioner with dissuading victim McDonald on January 15, 2007. (See CT at 421.)

The California Court of Appeal was the last state court to issue a reasoned opinion addressing this claim. Accordingly, the undersigned considers whether the denial of this claim by the California Court of Appeal was objectively unreasonable. The California Court of Appeal denied this claim for the reasons stated herein:

> In count 7, Ek was charged with violating section 136.1, subdivision (c) by attempting to prevent McDonald "from attending and giving testimony at any trial proceeding and inquiry authorized by law and assisting in the prosecution of a complaint, indictment, [or] information, …" The instruction for this count was the same one used for count 3. Thus, the jury was instructed that Ek could be guilty of the crime if he tried to prevent McDonald from reporting or causing the arrest of anyone in connection with a crime. Ek concedes that as there was no objection to the instruction the instruction may be deemed to have amended the information.
>
> Ek argues he could not have been guilty of preventing McDonald from reporting the arson, since she had already reported it. He argues that while it is possible he was attempting to prevent her from causing his arrest for the arson and prior threat, there is insufficient evidence this was his specific intent. He argues there was no reason for him to think McDonald could do nothing more to bring about his arrest. We disagree.
>
> "'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains

---

[2] Petitioner's co-defendant, Michael Louie, raised this same claim in his federal habeas petition. The Honorable James K. Singleton also found that petitioner Louie was not entitled to habeas relief as to this claim on grounds that the denial of this claim by the California Court of Appeal was not objectively unreasonable. See Louie v. Frauenheim, 2015 WL 403822 at *11-12 (E.D. Cal. 2015).

11

> substantial evidence – that is, evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]' [Citation.]" (People v. D'Arcy (2010) 48 Cal.4th 257, 293.)
>
> As long as Ek had not yet been arrested, McDonald could assist in his arrest by identifying him as the perpetrator. His actions toward her, accompanied by his threat and calling her a cop caller, were clearly meant to intimidate her and prevent her from continuing her cooperation with police regarding his crime and the crimes of his associates. His actions and words were sufficient to show his specific intent.

(ECF No. 14 at 46-47.)

Viewing the evidence in the light most favorable to the verdict, the undersigned finds that there was sufficient evidence, as discussed above by the California Court of Appeal, from which a rational trier of fact could have found beyond a reasonable doubt that, on January 15, 2007, petitioner intended to intimidate victim McDonald and prevent her from continuing her cooperation with the police regarding the arson and the crimes of petitioner's associates. The denial of this claim by the California Court of Appeal was not objectively unreasonable. Cavasos, 132 S. Ct. at 4. Accordingly, this claim is denied.

V. Jury Instruction Error

A. Legal Standard

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "It is not the province of a federal court to reexamine state court determinations of state law questions." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Instead, the petitioner must prove that the improper instruction "by itself so infected the entire

1 trial that the resulting conviction violated due process." Estelle, 502 U.S. at 72. Even if there
2 were constitutional error, habeas relief cannot be granted absent a "substantial and injurious
3 effect" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). If the court is
4 convinced that the error did not influence the jury, or had little effect, the judgment should stand.
5 O'Neal v. McAninch, 513 U.S. 432, 437 (1995).

6 A federal court's review of a claim of instructional error is highly deferential. Masoner v.
7 Thurman, 996 F.2d 1003, 1006 (9th Cir. 1993). A reviewing court may not judge the instruction
8 in isolation, but must consider the context of the entire record and of the instructions as a whole.
9 Id. The mere possibility of a different verdict is too speculative to justify a finding of
10 constitutional error. Henderson, 431 U.S. at 157.

11 Where a petitioner claims that an instruction was erroneously omitted, the petitioner bears
12 an "especially heavy burden" because an omitted or incomplete instruction is less likely to be
13 prejudicial than a misstatement of the law. Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir.
14 1997).

15     B.  Analysis

16 Petitioner challenges the witness intimidation instruction on grounds that it allowed the
17 jury to convict him of dissuading a witness from reporting a crime that was not the same crime
18 the victim either witnessed or suffered.

19 The California Court of Appeal was the last state court to issue a reasoned opinion
20 addressing this claim. Accordingly, the undersigned considers whether the denial of this claim by
21 the California Court of Appeal was objectively unreasonable. The California Court of Appeal
22 denied this claim for the reasons stated herein:

> Defendants argue the witness intimidation instruction was faulty because it allowed them to be convicted of dissuading a witness from reporting a crime that was not the same crime the victim either witnessed or suffered. Ek raises this argument as both count 3 (occurring on January 6, 2007) and count 7 (occurring on January 15, 2007).
>
> Defendants argue that section 136.1 subdivisions (b)(1) and (b)(3) require an identify between the crime the victim suffered of witnessed, and the crime the victim is being dissuaded from reporting or from which the victim is facilitation an arrest.

> [Footnote 4.]
>
> [Footnote 4: Defendant interprets the statute this way because subdivisions (b)(1) and (3) make it a crime to prevent a person from making a report of "that victimization" and from causing an arrest in connection with "that victimization."]
>
> If a person is being dissuaded from reporting a crime or assisting in the arrest of a suspect, it follows that the person was either a victim or a witness to the crime. This case involves the added circumstances that defendants also could have been intimidating the victim to prevent her from reporting future crimes committed by the gang.
>
> The jury was instructed in pertinent part that it must find that: (1) "defendant maliciously tried to prevent or discourage … McDonald from reporting a victimization or causing the arrest of anyone in connection with a crime;" (2) "McDonald was a witness or crime victim;" and (3) "defendant knew he was trying to prevent or discourage Christina McDonald from reporting a victimization or causing the arrest of anyone in connection with a crime and intended to do so." To the extent the instruction indicated to the jury that defendants were guilty of the crime even if the jury found their intent was to dissuade McDonald from reporting some crime that she had not yet witnessed or suffered, the error was harmless.
>
> "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]" (People v. Cross (2008) 45 Cal.4th 58, 67-68.) "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citations.]" (People v. Carrington (2009) 47 Cal.4th 145, 192.)
>
> There is no reasonable likelihood that the jury would have believed that it was defendants' intent to prevent McDonald from reporting or facilitating defendants' arrest as to future uncommitted crimes, but not the very crime that was meant to intimidate her. The jury could not have believed that it was okay for defendants to dissuade McDonald from reporting or having them arrested for burning her apartment, but not okay for them to dissuade her from reporting future, as yet uncommitted crimes. We will not reverse unless there is a reasonable likelihood the jury misconstrued or misapplied the jury instruction in a way that denied fundamental fairness. (People v. Clair (1992) 2 Cal.4th 629, 663.) There was no such reasonable likelihood here, thus any error was harmless.

(ECF No. 14 at 48-50.)

The undersigned agrees with the reasoning of the California Court of Appeal that any instructional error was harmless because there is no reasonable likelihood that the jury would

have believed that it was petitioner's intent to prevent victim McDonald from reporting or facilitating petitioner's arrest as to future, uncommitted crimes, but not the arson, i.e., the crime that was meant to intimidate her.  Thus, even assuming the instruction was erroneous, it did not have a "substantial and injurious effect or influence in determining the jury's verdict," Brecht, 507 U.S. at 638, and the undersigned is without "grave doubt as to the harmlessness of [the] error." Merolillo v. Yates, 663 F.3d 444, 454 (9th Cir. 2011) (quoting O'Neal v. McAninch, 513 U.S. 432, 437 (1997).  Accordingly, this claim is denied.[3]

VI  Sentencing Error/Double Jeopardy

Petitioner argues that his conviction for arson violates double jeopardy because arson, criminal threat and witness intimidation, based on the events of January 6, 2007, formed an indivisible course of conduct.  Petitioner alleges that his conviction and sentence for arson violates the double jeopardy clause and California Penal Code § 654.

The California Court of Appeal issued a reasoned opinion addressing petitioner's state law claim.  The California Court of Appeal did not specifically address petitioner's double jeopardy claim, although petitioner raised it on appeal.  (See petitioner's opening brief, respondent's lodged document 16.)  Petitioner raised his double jeopardy claim in his petition for review, which the California Supreme Court denied without comment or citation.  (See Respondent's lodged documents 20, 21.)  Because there is no reasoned state court decision addressing the double jeopardy claim, the undersigned conducts an independent review of the record to determine whether the denial of this claim was objectively unreasonable.  Harrington, 131 S. C. at 784.

The undersigned herein sets forth the section of opinion of the California Court of Appeal denying petitioner's related state law claim as it is helpful in reviewing the related double jeopardy claim:

////

---

[3] Petitioner's co-defendant Michael Louie raised the same claim challenging the witness intimidation instruction in his federal habeas petition.  Judge Singleton also found that any error in the instruction was harmless.  See 2015 WL 403822 at *8.

C.  Section 654:  Arson, Dissuading a Witness

Ek argues that the arson, witness intimidation, and criminal threat that the jury found occurred on January 6, 2007, comprised a course of conduct with the single objective of punishing McDonald for being a "cop caller." As such, he argues the punishment for arson should have been stayed pursuant to section 654. We disagree.

There was sufficient evidence to support a finding by the trial court that defendants harbored multiple independent objectives when they threatened McDonald, then set her apartment on fire. (See People v. Herrera (1999) 70 Cal.App.4th 1456, 1466 ["The question of whether the defendant held multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal."].)

Detective Slater testified that one of defendants' criminal objectives was to make sure the entire neighborhood knew what would happen to anyone who reported the criminal activities of the gang. The jury was instructed that to find defendants guilty of arson, it must find that defendants acted on purpose to burn the apartment. The fact that the jury convicted defendants of arson indicates it found beyond a reasonable doubt that one of defendants' purposes was to burn the apartment. There was also sufficient evidence based on the verbal threat given to McDonald, that one of the criminal objectives was to prevent McDonald from reporting the crime to the authorities. Defendants themselves argue their purpose was to punish McDonald for reporting past crimes.

Moreover, where a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective. (People v. Beamon (1973) 8 Cal.3d 625, 639, fn.11.) If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed. (In re William S. (1989) 208 Cal.App.3d 313.) The evidence indicated that there was a pause of about 15 minutes between the verbal threat to McDonald and the fire. McDonald did not mention seeing a bucket or smelling gasoline, thus, as Ek recognizes, the "only reasonable conclusion is that, after McDonald closed her door, [Ek] set about provisioning himself with a bucket filled with gasoline and then returned to McDonald's apartment to pour the gasoline on the door and window and ignite it." This gave defendants the time to reconsider and reflect upon their actions, and to renew their intent before burning McDonald's apartment.

Because defendants' course of conduct consisting of two criminal acts was incident to several objectives and was separated in time by an interval sufficient to allow them to reflect and renew their intent, the court properly sentenced defendants for the crimes of arson and dissuading a witness.

(ECF No. 14 at 56-58.)

1    Petitioner's claim alleging that the failure to stay his sentence for the arson conviction
2 violated state law is not cognizable on federal habeas review.  See Lewis v. Jeffers, 497 U.S. 764,
3 780 (1990) (generally, a challenge to a state court's application of state sentencing laws does not
4 create a federal question cognizable on federal habeas review.)

5    The Double Jeopardy Clause of the Constitution provides that no person shall "be subject
6 for the same offen[s]e to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The
7 clause is enforced against the states through the Fourteenth Amendment.  Benton v. Maryland,
8 395 U.S. 784, 787 (1969).  The Supreme Court has previously held that this clause protects
9 against successive prosecutions for the same offense after acquittal or conviction and multiple
10 criminal punishments for the same offense.  Monge v. California, 524 U.S. 721, 727-28 (1998)
11 (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969).)

12    "[W]here the same act or transaction constitutes a violation of two distinct statutory
13 provisions, the test to be applied to determine whether there are two offenses or only one, is
14 whether each provision requires proof of a fact which the other does not…"  Brown v. Ohio, 432
15 U.S. 161, 166 (1997) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932).)  "If each
16 requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a
17 substantial overlap in the proof offered to establish the crimes."  Id. at 166 (quoting Iannelli v.
18 United States, 420 U.S. 770, 785 n.17 (1975).)

19    The undersigned begins the double jeopardy analysis by setting forth the elements of each
20 of the three at-issue offenses.  California Penal Code § 451(b) defines arson as follows:

> A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procedures the burning of, any structure, forest land, or property.
>
> (b) Arson that causes an inhabited structure or inhabited property to burn is a felony punishable by imprisonment in the state prison for three, five, or eight years.

25 Cal. Penal Code § 451(b).

26    Petitioner was found guilty of violating California Penal Code § 136.1, subsections (b)(1),
27 (b)(3), and (c)(1).  Subsection (c)(1) provides,
28 ////

17

> Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:
>
> (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.

(Cal. Penal Code § 136.1(c)(1).)

As discussed by the California Court of Appeal, the jury was instructed with subsections (b)(1) and (b)(3) of California Penal Code § 136.1. (See CT at 774.) These subsections provide as follows:

> Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in state prison:
>
> (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.
>
> ***
>
> (3) Arresting or causing or seeking the arrest of any person in connection with that victimization.

(Cal. Penal Code § 136.1(b).)

California Penal Code § 422(a) defines making criminal threats as follows:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

(Cal. Penal Code § 422(a).)

The California Court of Appeal found that petitioner's convictions for arson, threatening a witness and making criminal threats involved different transactions, i.e., they were not continuous, based on the 15 minute interval between the time petitioner threatened the victim and when he committed the arson.

The undersigned does not reach the issue of whether petitioner's convictions regarding the events of January 6, 2007, involved the same act or transaction, i.e., the grounds on which the California Court of Appeal rejected petitioner's related state law claim. Instead, the undersigned finds that petitioner's convictions did not violate double jeopardy because, even assuming they were continuous and involved the same transaction, each offense required proof of a fact which the others did not. Arson clearly requires proof of facts that are not required by California Penal Code sections 136.1 (dissuading a witness) and 422 (criminal threats). Making criminal threats and dissuading a witness have different elements:

> A criminal threat requires proof that, among other elements, the defendant intended the subject statement to be taken as a threat and the statement caused the victim reasonably to be in sustained fear for her own safety or the safety of her immediate family. (§ 422; People v. Toledo (2001) 26 Cal.4th 221, 227–28.) Felony dissuading a witness has different elements and requires a different intent. "Section 136.1 criminalizes trying to dissuade a victim from reporting a crime." (People v. Upsher (2007) 155 Cal.App.4th 1311, 1320.) Conviction of that felony offense requires the jury to find the defendant knowingly and maliciously tried to prevent or discourage a crime victim from making a report of that victimization to law enforcement. (§ 136.1; see People v. Upsher, supra, at pp. 1318–319.)

People v. Newman, 2013 WL 1836109 at *3 (2013).

Because petitioner's convictions for arson, dissuading a witness and criminal threats all required proof of different facts, no double jeopardy violation occurred. After independently reviewing the record, the undersigned finds that the denial of this claim by the state courts was not objectively reasonable. Accordingly, petitioner's double jeopardy claim is denied.

////

////

////

19

Accordingly, for all of the reasons set forth above, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied; and

2. A certificate of appealability is not issued.

Dated:  May 11, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ek1649.157